GILLIAN E. GOSCH
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
2702 Montana Avenue, Suite 101
Billings, MT 59101-2372
Phone: (406) 259-2459
Fax: (406) 259-2659
gillian_gosch@fd.org
      Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>JOSE ANTONIO ESCOBEDO,<br><br>           Defendant. | CR 19-113-BLG-SPW<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |

## I. INTRODUCTION

Defendant Jose Antonio Escobedo (Mr. Escobedo), by and through his undersigned counsel and the Federal Defenders of Montana, supports his motion to suppress all of the evidence obtained in his case with the following brief.

1

## II.  FACTS

The following recitation of facts is taken from the discovery provided by the government.

The drugs that form the basis of Mr. Escobedo's charge were obtained via an anticipatory search warrant that was only valid upon Mr. Escobedo accepting and taking into his home a package that officers intercepted at the post office.  A K-9 unit alerted to the package at the post office and a separate warrant for that specific package was obtained.  Officers confirmed the package contained 74 grams of a crystal substance.

As the following details, Ms. Escobedo challenges the search warrant obtained by officers to search his home.  Some of the information contained in that search warrant includes reference to the intercepted package.  The beginning suspicion upon which the entire search warrant was built, however, began with information obtained by Border Patrol Agent-Intelligence Matt Henderson and relayed to Billings Detective Tanner Beuchler.

In particular, Officer Henderson indicated that he had reviewed records and observed suspicious financial activity being sent by Mr. Escobedo from Billings, Montana, to McAllen, Texas.  Officer Henderson indicated further that McAllen, Texas is known for being involved in drug trafficking activity and that people are

known to send money to their sources so they may then receive narcotics in the mail.

In discovery, Mr. Escobedo received two separate Customs Summons that show the Department of Homeland Security requested information from Western Union Financial Services, Inc. And Continental Exchange Solutions, dba Ria. The Customs Summons required these entities to "PRODUCE the records (including statements, declarations, and other documents) indicated in Block 3 [*which references an attached page that was not provided*] before the CBP Officer or ICE Special Agent named in Block 2 at the place, date and time indicated." The Customs Summons stated further:

> Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE.

### III.  ARGUMENT

**Mr. Escobedo has a privacy right in his financial activity information; Therefore, the financial activity information gained in this case was in violation of his statutory and constitutional rights; Suppression is warranted.**

    **A.**    **Applicable Constitutional Law**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects people, not places. "The

3

Amendment does not protect the merely subjective expectation of privacy, but only those expectation[s] that society is prepared to recognize as reasonable." *Oliver v. United States*, 466 U.S. 170, 177 (1984) (internal quotation marks and citations omitted). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967) (holding that the user of a public telephone is entitled to "assumed that the words he utters into the mouthpiece will not be broadcast to the world"). The proper inquiry, therefore, is whether there is a subjective expectation of privacy which society is prepared to recognize as legitimate in the place or item searched. *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

In *United States v. Miller*, 425 U.S. 435 (1976), the United States Supreme Court cited *Hoffa v. United States*, 385 U.S. 293 (1966), for the proposition that "'no interest legitimately protected by the Fourth Amendment' is implicated by governmental investigative activities unless there is an intrusion into a zone of privacy, into 'the security a man relies upon when he places himself or his property within a constitutionally protected area.'" *Miller*, 425 U.S. at 440 (quoting *Hoffa*, 385 U.S. at 301-302). The Supreme Court in *Miller* emphasized a person has no Fourth Amendment privacy interest in information released to a third party and later conveyed by that third party to a governmental entity "even if the information is

revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443. The Supreme Court concluded the bank records in *Miller* were not "private papers" and were instead business records of the bank. *Miller*, 425 U.S. at 442.

Justice Brennan, however, in his dissenting opinion in *Miller* foreshadowed the situation before this Court now.

> Indeed, the totality of bank records provides a virtual current biography. While we are concerned in the present case [in 1976] only with bank statements, the logical extension of the contention that the bank's ownership of records permits free access to them by any police officer extends far beyond such statements to checks, savings, bonds, loan applications, loan guarantees, and all papers which the customer has supplied to the bank to facilitate the conduct of his financial affairs upon the reasonable assumption that the information would remain confidential. To permit a police officer access to these records merely upon his request, without any judicial control as to relevancy or other traditional requirements of legal process, and to allow the evidence to be used in any subsequent criminal prosecution against a defendant, opens the door to a vast and unlimited range of very real abuses of police power.

*Miller*, 425 U.S. at 451.

The distinction made by Justice Brennan is one regarding content information versus information that is used to establish accounts, or non-content information. *See also Smith*, 442 U.S. at 741 (critical distinction exists between content and non-content information). Mr. Escobedo agrees that disclosure of non-content

5

information to a third party destroys the privacy expectation that might have existed previously. Non-content information may include a person's name, billing address, and/or his home, work, and fax numbers. This type of information is available to a business's employees in the normal course of business.

In response to the *Miller* decision, Congress passed the Right to Financial Privacy Act of 1978. That Act prohibits financial institutions from providing the government with information concerning their customers' financial records, unless either the customer authorizes the disclosure of such information or the government obtains a valid subpoena or warrant. *See* 12 U.S.C. §3402. Congress and the Executive "regarded the Act as a compromise between a bank customer's right of financial privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." *See United States v. Frazin*, 780 F.2d 1461, 1465 (9th Cir. 1986).

### B.  Applicable Statutory Law

Here, the information gained pursuant to the Customs Summons and used to support a probable cause finding for the search warrant in Mr. Escobedo's case was personal financial activity. A Customs Summons is authorized under section 1509 of the Tariff Act of 1930, which is codified at 19 U.S.C. §1509. It provides:

> (a) Authority  In any investigation conducted for the purpose of . . . insuring compliance with the laws of the United States administered by the United States Customs Service, the Secretary (but no delegate of the Secretary below the rank of district director or special agent in charge) may --
>> (1) examine, or cause to be examined, upon reasonable notice, any record (which for purposes of this section, includes, but is not limited to, any statement, declaration, document, or electronically generated or machine readable data) described in the notice with reasonable specificity, which may be relevant to such investigation or inquiry[.]
>>
>> (2) summon, upon reasonable notice –
>> . . .
>> (C) any person having possession, custody or care of records relating to the importation or other activity described in subparagraph (A) [relating to merchandise].

As outlined in the statute, a Customs Summons exists to administratively enforce the import-export laws and various trade agreements. Title 19 U.S.C. §1509 authorizes Custom Special Agents in Charge to issue summons to inspect records for duties, fees, and other related matters. This Code Section is contained within the Part III (Ascertainment, Collection, and Recovery Duties) of Subtitle III (Administrative Provisions) of Chapter Four (Tariff Act of 1930) of Title 19, United States Code. In short, the Customs Summons serve only for administrative purposes related to trade.

**C.    Analysis**

Here, the Customs Summons was improperly used to gather financial activity information that formed the basis of further investigation into Mr. Escobedo. The

7

Customs Summons was not being used to gather information that was relevant to an already-existing investigation. It actually prompted an investigation of Mr. Escobedo after they gathered it. And, while the Customs Summons may be used to gather documents when an investigation is ongoing, no discovery provided to-date by the government indicates that to be the case. Rather, again, the financial activity information that was obtained prompted the investigation into Mr. Escobedo. The Customs Summons was therefore being used outside of its intended purpose and in violation of §1509 and §3402.

Mr. Escobedo's constitutional rights are implicated as a result of these violations because the Fourth Amendment protects against compilation of private information.

### D. All of the evidence gathered in this case must be suppressed.

The evidence gathered in this case was based on financial activity information evidence that was gathered in violation of both statutory and constitutional law. The Fourth Amendment exclusionary rule applies to evidence obtained as product of any illegal search and seizure. *Wong Sun v. United States*, 371 U.S. 471 (1963). *Also see United States v. Crawford*, 372 F.3d 1048, 1054 (2004) (en banc) (citing *Wong Sun*).

## IV.  CONCLUSION

WHEREFORE, Mr. Escobedo requests the Court to suppress all of the evidence obtained in violation his constitutional rights.

RESPECTFULLY SUBMITTED this 11th day of October, 2019.

/s/ Gillian Gosch
GILLIAN E. GOSCH
Assistant Federal Defender
Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 7.1(d)(2)(as amended). The brief's line spacing is double spaced, and is proportionately spaced, with a 14 point font size and contains less than 6,500 words. (Total number of words: 1,624 excluding tables and certificates).

DATED this 11th day of October, 2019.

                                      By: /s/ Gillian Gosch
                                             GILLIAN E. GOSCH
                                             Federal Defenders of Montana
                                             Counsel for Defendant

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on October 11, 2019, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM-ECF |
| _____ | Hand Delivery |
| 3 | Mail |

1. CLERK, UNITED STATES DISTRICT COURT

2. JULIE R. PATTEN
   Assistant U.S. Attorney
   U.S. Attorney's Office - Billings
   2601 2nd Avenue North, Suite 3200
   Billings, MT 59101
       Counsel for the United States of America

3. JOSE ANTONIO ESCOBEDO


          /s/ Gillian Gosch
          FEDERAL DEFENDERS OF MONTANA